**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

SOUTHWIRE COMPANY, et al.,

    Plaintiffs,

      v.

RAMALLO BROTHERS PRINTING,
INC., et al.,

    Defendants.

Civil No. 03-1100 (GAG/CVR)

**OPINION AND ORDER**

    Presently before the court is Defendants' motion (Docket No. 560) requesting reconsideration of the court's memorandum and order of October 19, 2009 (Docket No. 555), denying their request for the disqualification of Plaintiffs' counsel (Docket No. 498).  Plaintiffs duly opposed Defendants' motion for reconsideration  (Docket No. 564) and Defendants replied (Docket No. 579).  After carefully reexamining the pertinent law, the court **DENIES** Defendants' motion for reconsideration (Docket No. 560).

**I.     Standard or Review**

    Motions for reconsideration are generally considered under Fed.R.Civ.P. 59 or 60, depending on the time such motion is served. Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 284 (1st Cir. 1993).  Whether under Rule 59 or Rule 60, a motion for reconsideration cannot be used as a vehicle to relitigate matters already litigated and decided by the court. Villanueva-Mendez v. Vazquez, 360 F.Supp. 2d 320, 322 (D.P.R. 2005).  These motions are entertained by courts if they seek to correct manifest errors of law or fact, present newly discovered evidence, or when there is an intervening change in law. See Rivera Surillo & Co. v. Falconer Glass. Indus. Inc., 37 F.3d 25, 29 (1st Cir. 1994) (citing F.D.I.C. Ins. Co. v. World University, Inc., 978 F.2d 10, 16 (1st Cir. 1992); Cherena v. Coors Brewing Co., 20 F. Supp. 2d 282, 286 (D .P.R. 1998)).  Hence, this vehicle may not be used by the losing party "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier."  National Metal Finishing Com. v.

Civil No. 03-1100 (GAG/CVR)                    2

BarclaysAmerican/Commercial, Inc ., 899 F.2d 119, 123 (1st Cir. 1990).

In turn, a motion to disqualify an attorney is an accepted and adequate way for a litigant to bring a potential conflict of interest to the court's attention.  See Reyes Cañada v. Rey Hernandez, 193 F. Supp. 2d 409, 411 (D.P.R. 2002).  Courts, however, should be cautious in analyzing a disqualification motion because they are often used for strategic purposes.  See Somascan Plaza, Inc. v. Siemens Medical Systems, 187 F.R.D. 34, 37 (D.P.R. 1999) (citations omitted).  Further, disqualifying a "party's chosen attorney is a serious matter which could not be supported by the mere possibility of a conflict."  Estrada v. Cabrera, 632 F. Supp. 1174, 1175 (D.P.R. 1986) (citing Richmond Hilton Assoc. v. City of Richmond, 690 F.2d 1086, 1089 (4th Cir. 1982)).  Thus, courts must balance the competing interests of a client's right to be represented by an attorney of her choice and the integrity of the legal system.  See Kevlik v. Goldstein, 724 F.2d 844, 850 (1st Cir. 1984);[1] Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc., 903 F. Supp. 253, 256 (D.P.R. 1995).

**II.    Factual Background**

On January 31, 2003, Plaintiffs Southwire Company, Southwire International Corporation, and Heptagon, LTD (collectively "Southwire" or "Plaintiffs") filed a complaint against Defendants Ramallo Brothers Printing, Inc., Ramallo Screws and Bolts, Inc., Ramallo Casting, Inc., the estate of Esteban Ramallo, Sr., and his wife, Aida Diaz de Ramallo (collectively "Ramallo" or "Defendants") alleging violations of state and federal environmental laws, as well as a tort cause of action, for the release of hazardous substances at a property that Southwire leased to Ramallo, and that was used, *inter alia*, for manufacturing activities.[2]  Southwire also seeks to recover the response costs and damages incurred from responding to Ramallo's alleged contamination of said property.

---

[1] The court notes that Kevlik v. Goldstein was appealed to the First Circuit pursuant to an order of the district court allowing an interlocutory appeal under 28 U.S.C. § 1292(b).  See Kevlik, 724 F.2d at 845.

[2] The complaint was subsequently amended on various occasions (See Docket Nos. 15, 37, 134, 150) to add the defendants Angel Ramallo Diaz, Ingrid Ramallo Diaz, Aida Ramallo Diaz, and Caribbean Forms Manufacturers, Inc.; to add new causes of action under additional federal environmental statutes; and to comply with certain notice requirements under those laws.

Civil No. 03-1100 (GAG/CVR)                3

The law firm of John F. Nevares & Associates ("Nevares & Associates") began representing the Defendants in the present litigation in December of 2004.[3]  Such representation ended in May of 2007, when Nevares was granted leave to withdraw and the law firms of Curbelo, Baerga & Quintana and Rivera, Tulla & Ferrer assumed Ramallo's representation.

Attorney Walewska M. Watkins[4] ("Watkins") was employed at Nevares & Associates from July 10, 2003 until May 13, 2005, at which time she left the firm and moved to Los Angeles.  In 2007, Watkins decided to return to Puerto Rico and arranged for an interview at the law firm of O'Neill & Borges ("O&B"), which was held in October of that year.  During the interview, Watkins was asked whether she ever worked on any matters related to defendant Ramallo while at Nevares & Associates.  Watkins only recalled working on certain sexual harassment cases.  She was specifically asked whether she ever worked on the Southwire environmental litigation, to which she answered in the negative, but noted that she knew of the case.  Watkins was unaware at that time that O&B had been counsel for Southwire from the onset of this litigation.  She was then told that an ethical barrier would have to be erected to isolate her from the Southwire case and avoid the appearance of impropriety, since she had worked at Nevares & Associates while the same was still representing Ramallo in this ongoing litigation.  Watkins was thereafter extended an official offer of employment by O&B and began working there on March 25, 2008.

On July 1, 2008, attorney for Ramallo, Eric Tulla ("Tulla"), advised attorney for O&B, Carlos Valdejully ("Valdejully"), that he had learned of Watkin's current employment with O&B and had information that she had worked for Ramallo in this case while at Nevares & Associates.  Relying on Watkins' recollections, Valdejully advised Tulla that Watkins had not worked on this

---

[3] This date is taken from Defendants' many briefs to the court on this matter.  However, the court notes that attorney John F. Nevares ("Nevares") testified at the hearing on the disqualification motion that his firm had been retained by the defendant Ramallo Brothers Printing, Inc. on or about 2001, in relation to all of its pending federal litigations.  (See Motion Hearing Tr. vol. 1, February 23, 2009, at 16.)  Nevares first appeared in this case on January 31, 2005.  (See Docket No. 61.)

[4] The court notes that, at that time, Watkins used her maiden name, Valdes-Marchand.

Civil No. 03-1100 (GAG/CVR)                    4

case in the past and that she had not worked on it since she began employment at O&B.  Tulla

verified Ramallo's information and wrote Valdejully on August 5, 2008, stating that Watkins had

in fact worked on substantive matters for the defense of Ramallo, sufficient to create a problem with

O&B's continued representation of Southwire in this case.  Valdejully responded on August 15,

2008 that Watkins had *limited* participation in the case while at Nevares & Associates – during a

period of three or four months, Watkins worked on a few narrow tasks retaled to the case, but she

did not gain confidential information from Ramallo.  Valdejully requested that any evidence to the

contrary be forwarded to O&B.  Regardless, Valdejully assured Tulla that, in order to avoid the

appearance of impropriety, a "Chinese Wall"[5]  had been erected between Watkins and all

documents/information/discussions relating to this litigation since the commencement of her

employment.  On October 23, 2008, attorneys for Ramallo again informed O&B that Watkins had

in fact been exposed to sensitive information while at Nevares & Associates and that a Chinese Wall

could not sanitize her prior adverse representation in this case.  Four days later, a meeting was held

between counsel for the parties, but no agreement could be reached on this point.

On February 10, 2009, Defendants presented their motion to disqualify Watkins and O&B,

as well as to enjoin them from disclosing any confidential information concerning Defendants and

from maintaining any financial interest in Plaintiffs' claim.  (See Docket No. 498.)  The Plaintiffs

opposed the motion.  (See Docket No. 505.)  A motion hearing was held on Febrary 23rd and 26th,

2009 (see Tr. Motion Hearing vols. 1 & 2, Docket No. 570) and post-hearing briefs were

subsequently filed by both sides (see Docket Nos. 517, 533, 537, 544, 548, 549).

On February 16, 2009, the American Bar Association House of Delegates passed Resolution

109, which amended Rule 1.10 of the Model Rules of Professional Conduct ("Model Rules") to

include provisions for the use of screening procedures to avoid the imputation of conflicts of interest.

_____

[5] A "Chinese" or ethical wall is "[a] screening mechanism maintained by an organization, esp[ecially] a law firm, to protect client confidences from improper disclosure to lawyers or staff who are not involved in a particular representation.  The screening mechanism is desinged to prevent a lawyer or law-firm disqualification from certain resprentations because of conflicts of interest."  Black's Law Dictionary 632 (9th ed. 2009).

Civil No. 03-1100 (GAG/CVR)              5

In March of 2009, Watkins resigned from her position at O&B "to pursue professional opportunities on the mainland."  (Docket No. 533 at 2-3.)

On October 19, 2009, the court issued its Memorandum and Order denying the Defendants' motion for disqualification (Docket No. 555) and the Defendants filed the present motion for reconsideration (Docket No. 560) on November 2, 2009.

**III.    Discussion**

**A.    Motion for Reconsideration**

In their motion for reconsideration, Defendants argue that the court erred when it relied on Rule 1.10(b) of the Model Rules of Professional Conduct to deny their motion requesting the disqualification of plaintiffs' counsel.  Defendants also reassert their previous arguments for disqualifaction and add that under Model Rule 1.10(a) disqualification is imputed, regardless of whether confidences were in fact shared, so that any factual determination made by the court in that regard would be inapposite.  The court will examine these contentions to determine whether it committed a manifest error of law when it denied Defendants' motion for disqualification.

Rule 1.10(b) provides as follows:

> When a lawyer has terminated an association with a firm, the firm is not prohibited from *thereafter* representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
>
> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

Model Rules of Prof'l Conduct R. 1.10(b) (emphasis added).  The court had previously been convinced by Plaintiffs argument that, because Watkins terminated her association with O&B in March of 2009, before the court's ruling on the matter of disqualification, Model Rule 1.10(b) came into play.  Under this rule, unless the movants here proved that Watkins *in fact* shared protected information gleened from her previous employment at Nevares & Associates with her co-workers at O&B, the prohibition that previously could apply through the imputation of a conflict of interest under Model Rule 1.10(a) would be lifted.  Thus, the court concluded that, absent this factual

showing, Rule 1.10(b) compelled the dismissal of the motion for disqualification.  Upon further study, however, it is clear that Plaintiffs' argument to this effect and, hence, the court's prior ruling on the disqualification motion, are flawed.

As pointed out by Defendants, the use of the word "thereafter" in the text of the rule points to the conclusion that it was meant to allow for the *prospective* representation of clients with interests adverse to clients formerly or currently represented by attorneys that used to be associated with the firm.  The comment to Model Rule 1.10(b) states, in part, that the rule "operates to permit a law firm, under certain circumstances, to represent a person with interests directly adverse to those of a client represented by a lawyer who *formerly* was associated with the firm."  Model Rules of Prof'l Conduct R. 1.10 cmt (2007) (emphasis added).  This rule is, on its face, inapplicable to cases such as this, where the imputation of a conflict of interest is alleged to have occured prior to the termination of the attorney's association with the firm.  Moreover, at the time the disqualification motion was presented, Watkins was still associated with O&B, a fact that also counsels against the use of Rule 1.10(b) in this case.

In light of the above, the court holds that it committed error when it denied Defendants' motion for disqualification under Model Rule 1.10(b).  The court will, therefore, consider the viability of Defendants' alternative arguments for disqualification, and the Plaintiffs remaining arguments in opposition.

**B.     Motion for Disqualification**

In summary, Defendants argue that Plaintiffs' legal representation, O&B, should be held to be in violation of the attorney-client privilege and disqualified from representing Southwire in this case because of Watkins' association with the firm from March 2008 to March 2009.

Rule 1.9(a) of the Model Rules of Professional Conduct provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

In turn, Rule 1.10(a), cited by Defendants, states that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be

prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest

of the prohibited lawyer and does not present a significant risk of materially limiting the

representation of the client by the remaining lawyers in the firm." Defendants contend that because

Watkins worked on matters related to this case while at Nevares & Associates in representation of

Ramallo's interests, under Rule 1.10(a) the firm was prohibited, upon hiring Watkins, from

representing Southwire in the same litigation.  This result, argue Defendants, could only have been

avoided if the former client whose interests are affected had given informed consent in writing,

under Rule 1.10(c), which has not, and will not, happen in this case.

Plaintiffs counter by arguing that the applicable rule regarding the imputation of conflicts of

interest is Rule 1.10(a) as amended by the ABA's House of Delegates in Resolution 109, on

February 16, 2009, which expressly permits the use of screening procedures to avoid the imputation

of conflicts of interest:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent
> a client when any one of them practicing alone would be prohibited from doing so
> by Rules 1.7 or 1.9, unless [. . .]
>
> (2) the prohibition is based upon Rule 1.9(a) or (b) and arises out of the disqualified
> lawyer's association with a prior firm, and
>
>> (i) the disqualified lawyer is timely screened from any participation
>> in the matter and is apportioned no part of the fee therefrom;
>>
>> (ii) written notice is promptly given to any affected former client to
>> enable the former client to ascertain compliance with the provisions
>> of this Rule, which shall include a description of the screening
>> procedures employed; a statement of the firm's and of the screened
>> lawyer's compliance with these Rules; a statement that review may
>> be available before a tribunal; and an agreement by the firm to
>> respond promptly to any written inquiries or objections by the
>> former client about the screening procedures; and
>>
>> (iii) certifications of compliance with these Rules and with the
>> screening procedures are provided to the former client by the
>> screened lawyer and by a partner of the firm, at reasonable intervals
>> upon the former client's written request and upon termination of the
>> screening procedures.

Model Rules of Prof'l Conduct R. 1.10, cited in ABA House of Delegates, Resolution 109

(February 16, 2009).  O&B contends that, upon hiring Watkins, it implemented screening

procedures in order to isolate Watkins from the Southwire case.  The firm avers that, even if

Watkins acquired confidential information while at Nevares & Associates regarding this case, it implemented appropriate procedures to insulate the office from the appearance of impropriety. Therefore, disqualification is unnecessary.  Counsel for Ramallo vigorously argues against the applicability of the amendment to Rule 1.10(a) in the instant case, and contends that screening procedures cannot be used to save a hiring firm from the imputation of a conflict of interest. Alternatively, they argue against the adequacy of O&B's screening procedures.

Defendants also argue for the application in this case of Standard 7(e) of the American College of Trial Lawyers' Code of Pretrial and Trial Conduct ("Code of Trial Conduct"), which this court adopted via standing order on September 14, 2006 (see Misc. No. 07-00186 (JAF), Docket No. 1), as well as the relevant precedent under Puerto Rico's Code of Professional Ethics.  Ramallo contends that the application of either of these sets of ethical provisions would favor disqualification, since neither admits the use of screening procedures in a case such as this. Plaintiffs refute this contention and also argue, as a threshold matter, that Defendants' delay in presenting their motion for disqualification evinces an intent to gain a tactical advantage, and that granting a motion for disqualification at this late stage in the ligitation would unduly prejudice Southwire and deny it of its choice of counsel.

### *1.     Delay in Presenting the Motion*

The court rejects Plaintiffs' delay argument, in as much as the parties entered into conversations shortly after news of a potential conflict reached Defendants, so that the real delay in presenting the motion lasted only three months, counting from the parties' last meeting regarding the matter, on October 27, 2009.  The First Circuit has stated that "the need for upholding high ethical standards in the legal profession far outweighs the problems caused by the delay in filing the disqualification motion."  Kevlik, 724 F.2d at 848.  Furthermore, the Court in Kevlik agreed with the Second Circuit's reasoning in Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1978), that if "disqualification is in the public interest, the court cannot act contrary to that interest by permitting a party's delay in moving for disqualification to justify the continuance of [an ethical breach]."  Id. at 848 cited in Kevlik, 724 F.2d at 848.  Finally, the court notes that there is no tangible evidence here, besides the alleged delay, of improper motive.

As for the argument that Southwire's choice of counsel will be denied if O&B is disqualified, the court points out that in civil cases "there is no rigorous sixth amendment protection of the right to the choice of counsel." Kevlik, 724 F.2d at 849 (citing United States v. Cunningham, 672 F.2d 1064, 1071 (2d Cir. 1982); United States v. Armedo-Sarmiento, 524 F.2d 591, 592 (2d Cir. 1975)).   Thus, the court weighs Southwire's right to choice of counsel as a factor in its determination regarding disqualification, but the same cannot automatically trump the prevention of unethical conduct.  See id. at 849 ("We think it more important that unethical conduct be prevented than that defendant have an unfettered right to counsel of its choice.").

### 2.    *Conflict of Interest as to Attorney Walewska M. Watkins*

It is now undisputed that during her association with Nevares & Associates, Watkins worked on matters related to the instant case on behalf of the Defendants.  Southwire argued for some time that Watkins performed only some discrete and limited work for Ramallo, from which she could not have gleened any confidential information, nor information covered by the attorney-client privilege.  However, the evidence presented at the motion hearing established that her involvement in this case was considerable.  The testimony at the hearing confirmed that, though she did not have direct contact with Mr. Ramallo, Watkins discussed matters pertaining to the initial stages of this litigation with Nevares.  Nevares testified that he would relay information acquired from conversations with Mr. Ramallo back to Watkins so that she could properly handle her assignments relating to this case.  The court took note that Watkins worked for approximately four months on this case (from December 2004 to April 2005), conducting legal research, drafting motions and  handling discovery matters (e.g. reviewing depositions and preparing subpoenas). Redacted copies of the billing statements sent to Ramallo from Nevares & Associates were presented, which reflect extensive work done by Watkins.

The purpose of Model Rule 1.9(a) is to prevent confidential information from a prior representation from being used against the prior client for the benefit of a new client, that is an adversary to the former.  See Reyes Cañada, 193 F.Supp. 2d at 411(citing Polyagro Plastics, 903 F. Supp. at 256).  "In a conflict of interest situation, [. . .] the relevant inquiry is whether the subject matter of the two representations is 'substantially related'; *could* the attorney have obtained

confidential information in the first suit that would have been relevant to the second." <u>Borges v. Our Lady of the Sea Corp.</u>, 935 F.2d 436, 439-40 (1st Cir. 1991) (emphasis added) (citing <u>Analytica, Inc. v. NPD Research, Inc.</u>, 708 F.2d 1263, 1266 (7th Cir. 1983)).  "The court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.  It will not inquire into their nature and extent.  Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained." <u>Kevlik</u>, 724 F.2d at 850-51 (quoting <u>T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.</u>, 113 F. Supp. 265, 268-69 (S.D.N.Y. 1953)).

Thus, application of this rule involves a three-step inquiry.  First, the court factually reconstructs the scope of the prior representation.  Second, the court assumes that the lawyer obtained confidential information about all facts reasonably within the scope of the former representation.  Finally, the court determines whether any aspect of the former representation is so similar that a lawyer would consider it useful in advancing the interests of the client in the later representation. <u>See</u> <u>Reyes Cañada</u>, 193 F. Supp. 2d at 412; <u>Somascan Plaza, Inc.</u>, 187 F.R.D. at 38; <u>Starlight Sugar Inc. v. Soto</u>, 903 F. Supp. 261, 265-66 (D.P.R. 1995); <u>Estrada</u>, 632 F. Supp. at 1176.

Having established the scope of Watkins' prior representation, the court applies the second and third steps of the conflict of interest inquiry.  Though Watkins did not remember working on this case, she was in fact in a position to obtain confidential information from Ramallo during her employment at Nevares & Associates.  The breadth of her former representation suggests that Watkins, at the very least, *could* have had access to confidential information that would be directly relevant to the present representation of Southwire, a party with interests adverse to Ramallo's.  Therefore, the court concludes that Model Rule 1.9(a) would have required Watkins' disqualification in the event she had directly represented Southwire in this case.

The court now turns to the question of whether it should vicariously disqualify O&B due to Watkin's association with the firm from March 2008 to March 2009.

### 2.   *Applicable Rule Regarding the Imputation of Conflicts of Interest*

"Absent promulgation by means of a statute or a court rule, ethical provisions of the ABA or other groups are not legally binding upon practitioners." <u>Culebras Enteprises Corp. v. Rivera-</u>

Rios, 846 F.2d 94, 98 (1st Cir. 1988) (citing International Electronics Corp. v. Flanzer, 527 F.2d 1288, 1293 (2d Cir. 1975)).  Local Rule 83.5(a) of the United States District Court for the District of Puerto Rico, adopted in 2004, states that "[i]n order to maintain the effective administration of justice and the integrity of the Court, each attorney shall comply with the standards of professional conduct required by the Rules of Professional Conduct (the "Model Rules"), adopted by the American Bar Association, as amended. [. . .]" L.Civ.R. 56(b).  Thus, the applicable rules of ethical conduct in this district are the Model Rules, "as amended."

        The first question before the court is whether the term "as amended" in Local Rule 83.5(a) means that any subsequent amendments by the ABA to the Model Rules are automatically applicable to this district, as argued by Plaintiffs; or if it means that the Model Rules were adopted in 2004 as they had been amended up to that point, as argued by Defendants.  Defendants aver that since the ethical provisions of the ABA or other groups are not legally binding upon practitioners absent promulgation by means of statute or a court rule, see Culebras Enterprises, 846 F.2d at 98, any subsequent amendments to these standards that have not been adopted by the Court may provide general guidance, but should not overrule the ethical standards that were legally binding at the time the motion was presented.  Southwire responds that the phrase "as amended" normally means that subsequent amendments to the law or rule should be incorporated by reference.  They point out that previous amendments to the Model Rules have been applied in this District without any intervening order or resolution of the court experessly adopting them.  See, e.g., Standard Quimica de Venezuela, C.A. v. Central Hispano International, Inc., 179 F.R.D. 64, 64-65 (D.P.R. 1998) (applying the 1993 amendment to Model Rule 8.5, while the equivalent to Local Rule 83.5 at that time was Local Rule 211.4,[6] which was adopted nine years earlier, in 1984); Rivera v. Periodicos Todo Bayamon, --- F. Supp. ----, 1997 WL 43202 (D.P.R. 1997) (also applying the amended version of Model Rule 8.5).  Southwire further argues that the fact that the amendment

---

[6] Local Rule 211.4(b) stated at that time that attorneys' acts or omissions would constitute misconduct if they violated "the rules of professional responsibility adopted by the Court and attached hereto (Model Rules of Professional Conduct adopted by the American Bar Association on August 2, 1983) [. . .]" Standard Quimica, 170 F.R.D. at 64.

Civil No. 03-1100 (GAG/CVR)                    12

to Model Rule 1.10(a) is the more lenient standard counsels in favor of its application to the facts of this case.  See Culebras Enterprises, 846 F.2d at 98 (it was "especially appropriate" to apply the more recent standard to a motion to disqualify, instead of the one in effect when the complaint was presented, since the new standard was "more lenient than the alleged earlier one").

In Culebras Enterprises, the First Circuit vacated and remanded the denial of a request for attorneys' fees because the district court relied on a set of ethical rules that had never been formally adopted, instead of applying a more permissive rule that had recently been incorporated into the local rules of the court.  The First Circuit stated that, "in acting upon a motion to disqualify or sanction an attorney, the district court should generally apply the ethical standard that is in effect at the time of the motion."  Id. at 98 (citing Kevlik, 724 F.2d at 847 n.4).  In doing so, it noted that "[r]eference to the most recent standard is *especially appropriate* where the new rule, like the district court's current one, [. . .] is more lenient than the alleged earlier one."  Id. (emphasis added).  The Court went on to state that:

> [t]he canons of ethics codify rules of conduct for attorneys that the legal community and the courts deem to be appropriate at a certain time.  Adoption of a new rule approving conduct that once was regarded as improper by the legal community and the courts tends to remove the reasons for enforcing the earlier, harsher standard.

Id.  Per Plaintiffs' argument, this language seems to counsel against the application in the instant case of Model Rule 1.10 in its original form, since the same does not expressly allow screening procedures, while the more recent rule does.  However, the court cannot ignore the fact that in Culebras Enterprises the First Circuit favored the application of a more lenient rule of conduct in part because it had been adopted by the District Court through the local rules by the time the motion for attorneys' fees was presented.  The First Circuit was not contemplating a situation such as the one presently before this court, where the more lenient rule has yet to be considered by the District Court for formal incorporation.

In  Kevlik v. Goldstein, the First Circuit had considered a situation more similar to the one here, where the American Bar Association had adopted new rules of ethical conduct – the Model Rules of Professional Conduct – by the time the case came before the Court on appeal.  The rules of the District Court of New Hampshire at that time stated that "The Code of Professional

Responsibility of the American Bar Association shall be the standards of conduct for all attorneys practicing before this court." Kevlik, 724 F.2d at 846-47 (citing Rule 4(d) of the Rules of the U.S. District Court for the District of New Hampshire). However, the new Model Rules adopted by the ABA on August 2, 1983 varied substantively in some areas from the earlier Model Code of Professional Responsibility, which was the code of ethics formally approved under the New Hampshire District Court's local rules. Notwithstanding, the Court discarded the question of which set of rules to apply in a footnote, stating that:

> [. . .] in the instant case the end result, whether resolved under the Model Rules of Professional Conduct or under the the the Model Code of Professional Responsibility, would be the same. *But, as the Model Code of Professional Conduct was in effect at the time of the disqualification motion, we use it as our controlling reference.*

Id. at 847 n.4 (emphasis added). Thus, the First Circuit applied the earlier ethical rules, in spite of the ABA's recent adoption of new rules, (1) because it would not have altered the outcome and (2) because those were the rules in effect, under the applicable local rules, at the time the disqualification motion was presented.

Our review of the case law reveals that there is no precedent squarely on point that would dispose of the issue currently before the court. Though Culebras Enterprises provides some indication that the First Circuit would favor the application of the more lenient rule, regardless of when it is adopted, the pronouncements in Kevlik, which is the case most similar to the one presently before the court, suggest that the applicable rule should be the one that was in effect at the time the disqualification motion was presented.[7] Therefore, despite the ABA's subsequent amendment creating a more permissive text that expressly allows screening procedures, the court will use Model Rule 1.10(a) in its original text, as of February 10, 2009, as the controlling reference regarding the imputation of a conflict of interest in this case.

### 3.    *Imputation of the Conflict of Interest to O&B under Model Rule 1.10(a)*

Before the ABA's recent amendment, Model Rule 1.10(a) stated that:

---

[7] The fact that amendments to the Model Rules have previously been applied in cases before this court without formal adoption does not alter this determination, since the issue currently before the court was not raised in those previous cases.

[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Having determined that, under Model Rule 1.9(a), Watkins would be prohibited from representing Southwire in this case, the question before the court becomes whether Model Rule 1.10 allows for the use of screening procedures to save O&B from disqualification, given Watkins' association with the firm from March 2008 to March 2009. More specifically, imputed disqualification, or vicarious disqualification, is based on the presumption that the challenged attorney which has "switched sides" will disclose confidential information to the new firm, or that the latter will inadvertently learn such information. The parties' dispute is whether the presumption of shared confidences between Watkins and the members of O&B should be considered rebuttable or not.

As pointed out by Plaintiffs, the First Circuit has not yet addressed this issue. In Kevlik, the First Circuit considered the issue, but declined to reach it, since the firm in question was a small firm of twenty-five members and it never suggested that the information received by the lawyer was not transmitted to or learned by the other members of the firm. See Kevlik, 724 F.2d at 849 n.5. Although some courts have treated the presumption that confidences are shared within a firm as irrebutable, see, e.g., Owens v. First Family Financial Services, Inc., 379 F.Supp.2d 840, 851 (S.D. Miss. 2005) (discussing Fifth Circuit's standard under In re American Airlines, Inc., 972 F.2d 605, 614 n.1 (5th Cir. 1992)),[8] others allow the presumption of confidence sharing within a firm to be rebutted, see, .e.g., Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983); EZ Paintr Corporation v. Padco, Inc., 746 F.2d 1459, 1461 (Fed. Cir. 1984); Manning v. Waring, Cox, James, Sklar & Allen, 849 F.2d 222, 224 (6th Cir. 1988); Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 133 (2nd Cir. 2005).

Defendants argue that the court should follow the approach of the Fifth Circuit, where the presumption is irrebuttable, given that the applicable text of Model Rule 1.10(a) does not expressly

---

[8] Defendants also indicate that screening mechanisms are not allowed in the states of Rhode Island, Maine, California, and New Jersey, nor are they applicable in the Ninth and Fourth Circuits.

provide for screening procedures.  They also point to the ABA's comment regarding the definition

of "screening" in Model Rule 1.0 (as of February 10, 2009), which stated that the same was

considered applicable to "situations where screening of a personally disqualified lawyer is permitted

to remove imputation of a conflict of interest under Rules 1.11 [special conflicts of interest for

former and current government officers], 1.12 [former judge, arbitrator, mediator, or other third-

party neutral] or 1.18 [organization as client]."  Model Rules of Prof'l Conduct R. 1.0 cmt (2007).

The comment did not mention that screening procedures were permitted to avoid the  imputation

of conflicts of interest in the private-firm context.  Under the Fifth Circuit's approach, "once it is

established that the prior matters are substantially related to the present case, the court will

irrebuttably presume that relevant confidential information was disclosed during the former period

of representation."  In re American, 972 F.2d at 614 (internal citations omitted).  This gives rise to

a second irrebuttable presumption that confidences obtained by an individual lawyer will be shared

with the other members of his new firm, the logical effect of which is that a Chinese Wall cannot

apply.  See Owens, 379 F. Supp. 2d at 851 (quoting Id. at 614 n.1).

Plaintiffs, on the other hand, ask the court to apply the standard used in the seminal

Schiessle case from the Seventh Circuit, wherein the Court applied a three step analysis.  First, the

court must determine whether a substantial relationship exists between the subject matter of the

prior and present representation.  If the court concludes that a substantial relationship exists, it must

next ascertain whether the presumption of shared confidences with respect to the prior

representation has been rebutted.  If it has not – which, in this case, it cannot – the court must then

determine whether the presumption of shared confidences has been rebutted with respect to the

present representation.  Thus, "even if there is a substantial relationship between the two matters,

the lawyer can avoid disqualification by showing that effective measures were taken to prevent

confidences from being received by whichever lawyers in the new firm are handling the new

matter."  Schiessle, 717 F.2d at 420 n.2.

The Seventh Circuit's approach has been adopted by many courts in situations where the

applicable rule of ethical conduct contained language similar to, or more restrictive than, Model

Rule 1.10(a) in its original text.  See, e.g., Hempstead Video, Inc., 409 F.3d at 133 (citing cases and

1    describing it as a "strong trend"); Burgess-Lester v. Ford Motor Company, 643 F. Supp. 2d 811,

2    812-19 (N.D. West Virginia 2008) (citing cases and applying Schiessle analysis under similar West

3    Virginia ethical rule).[9]   Taking this into consideration, the court finds Plaintiffs' argument more

4    persuasive.  In addition, even though this court is compelled to apply Model Rule 1.10(a) as it read

5    on the date the motion for disqualification was filed, the fact that the ABA has so recently[10] passed

6    an amendment to expressly allow for the use of screening procedures counsels the court in favor

7    of applying the more lenient standard regarding the presumption of shared confidences, particularly

8    in light of the lack of caselaw from the First Circuit on this issue to provide guidance.  The court

9    will, therefore, apply the rebuttable presumption standard to the case at bar.

10            Here, there is no dispute that the subject matter of the prior and present representations are

11   substantially related – indeed, the subject matter is identical, as it concerns the same litigation.  The

12   only factor that has changed is that Defendants have new representation and that Watkins worked

13   with Plaintiffs' counsel (O&B) for one year, after having worked on the case while employed for

14   the Defendants' prior representation.  As previously discussed, the extent of Watkins' involvement

15   in the case while at Nevares & Associates leads to a strong presumption that Watkins actually

16   acquired  confidential information, one that has not been effectively rebutted by Plaintiffs.  Thus,

17   the court must go on to the third step and determine whether the presumption of shared confidences

18   has been rebutted with respect to the present representation.  "In other words, the court must

19

20   _____

21       [9] Resolution 109 of the ABA's House of Delegates, approving the amendment to Model Rule
22   1.10, contains a Report prepared by the ABA's Standing Committee on Ethics and Professional
     Responsibility, which states that:

23       [s]ince the advent of the Model Rules, [. . .] 23 states have adopted rules of
24       professional conduct generally permitting the movement of a personally disqualified
         lawyer to a new firm without imputing that lawyer's disqualificatino to other lawyers
25       in the new firm, if the lawyer is timely screened from participation in the matter.

26   ABA Standing Comm. on Ethics and Prof'l Responsibility, Report with Recommendations to the
27   House of Delegates, adopted as revised by Resolution 109 (February 16, 2009) at ¶ 2.

28       [10] The court notes that the amendment was passed just six days after the motion was filed.

1   determine whether the knowledge of 'confidences and secrets' of [Ramallo] which [Watkins]

2   brought with [her] has been passed on to or [was] likely to be passed on to the members of the

3   [O&B] firm." Schiessle, 717 F.2d at 421.  The presumption of shared confidences can be rebutted

4   by demonstrating that "'specific instutitional mechanisms' (i.e. 'Chinese Walls') had been

5   implemented to effectively insulate against any flow of confidential information from the 'infected'

6   attorney to any other member of [her] present firm."  Id.

> Factors appropriate for consideration by the trial court might include, but are not
> limited to, [1] the size and structural divisions of the law firm involved, [2] the
> likelihood of contact between the "infected" attorney and the specific attorneys
> responsible for the present representation, [3] the existence of rules which prevent
> the "infected" attorney from access to relevant files or other information pertaining
> to the present litigation or [4] which prevent [her] from sharing in the fees derived
> from such litigation.

11   Id. (citing La Salle Nat'l Bank v. County of Lake, 703 F.2d 252, 259 (7th Cir. 1983)).  Thus, the

12   requirements of a screening procedure, per Schiessle, focus on the need to prevent the "infection"

13   from the personally disqualified attorney from spreading to the rest of the firm.

14          In terms of size and configuration, O&B had over seventy attorneys during the relevant time

15   period.  The firm occupies over 37,000 square feet, spread out over an entire floor and three quarters

16   of another.  The attorneys working on the Southwire case had offices on the East and Northeast

17   sides of the eighth floor.  The files for the case were also kept on the eighth floor, in front of some

18   of the attorneys' offices and guarded by their paralegals, or in a general filing room.  Meanwhile,

19   Watkins' office was on the opposite side the building, on the seventh floor.  Moreover, as an

20   associate, she had no proprietary interest in O&B, so that her salary in no way depended on the

21   outcome of any particular litigation.

22          When Watkins was being considered for employment, the Risk Management and Conflicts

23   Committee at O&B circulated her resume among the partners in order to capture any potential

24   conflicts of interests, as they always do in the regular course of business.  Having realized that a

25   former employer of Watkins had been counsel for Ramallo, O&B asked Watkins about this

26   particular case and others regarding that client.  Though Watkins had no recollection of having

27   worked on this case, she was told that an ethical wall would be built around her to avoid the

28   appearance of impropriety and, more specifically, that she was not to speak to anybody at O&B

1    about the Southwire case or any other matter that could relate to the opposing party.  O&B also

2    instructed the attorneys and other employees working on the Southwire case, both before and after

3    Watkins' arrival, to take steps to ensure that they did not communicate with Watkins regarding any

4    matter involving this case or the opposing party.  The litigation department head was instructed as

5    to the ethical wall and was told to ensure that it was being followed.  Watkins also personally

6    imparted instructions to the paralegals, upon her arrival, regarding the ethical wall.  Specifically,

7    the paralegals who keep the files for this case were told to prevent Watkins from coming into

8    contact or in any way accessing those files.  When the attorney for Ramallo informed O&B that they

9    thought Watkins had direct involvement with the case during her previous employment with

10   Nevares & Associates, O&B sent out an email with written instructions to the entire staff of O&B

11   regarding the Chinese Wall erected between Watkins and the Southwire case.  On February 19,

12   2009, three days after the approval of Resolution 109 by the ABA's  House of Delegates, attorney

13   for O&B Pedro Delgado issued a certificate of compliance with the amended Model Rule 1.10(a)

14   to all of the parties involved in this litigation.

15          Thus, the court finds that, given the information available to Plaintiffs's counsel at the time

16   of Watkins' hire, the mechanisms that were put in place were sufficient to "effectively insulate any

17   flow of information from the 'infected' attorney to any other member of [her] present firm."

18   Schiessel, 717 F.2d at 421.[11]  Defendants argue that, despite knowing that Watkins' association with

19   O&B could present a potential conflict of interest, O&B did not provide written notice to Ramallo

20   about the screening procedures that were put into place after Watkins joined the firm, or about the

21   potential conflict of interest itself.  However, as pointed out by Plaintiffs, written notice was not

22

23   ────────────────

24          [11] The court emphasizes that, at the time of her hiring, Watkins had no recollection of having

25   worked on matters related to this case while at Nevares & Associates.  The court further notes, as
     it did in its previous order regarding this motion for disqualification, that  it gave credence at the

26   motion hearing to the testimony of all O&B witnesses, that no one at O&B had spoken to Ms.
     Watkins about the case at hand, except in regards to the screening procedures.  In fact, the court

27   stated that it had no reason to believe that Watkins had affirmatively transmitted any information
     to anyone at O&B, so that those facts were not in dispute.  (See Docket No. 555, citing Motion

28   Hearing Tr. vol. 2, February 26, 2009 at 27-28.)

necessary, since at the time of Watkins' hiring (and of the disqualification motion) such notice was not a requirement for the effective implementation of a screening procedure.  The written notice requirement may have come into play when the amendment to Model Rule 1.10(a) was approved by the ABA's House of Delegates, but not before.

### 4. *Applicability of the Code of Trial Conduct and Puerto Rico's Code of Professional Conduct*

Defendants argued in the alternative that this court's standing order of September 14, 2006, which became effective on August 24, 2007, adopted the Code of Trial Conduct.  (See Misc. No. 07-00186 (JAF), Docket No. 1.)  Standard 7(e) of the Code of Trial Conduct states that "[w]hen a lawyer has left one firm and joined another, the lawyer and the lawyers' new firm are disqualified from representing a client in a matter adverse to a client of the former firm *if the lawyer acquired confidential information to the matter while with the former firm*." (emphasis added).  This text is more restrictive than the text of Model Rule 1.10(a), in either the original or amended versions, since it establishes a *per se* rule requiring the imputation of a conflict of interest in cases where the lawyer that creates the issue of disqualification actually acquired confidential information in his previous representation.

The question before the court is whether this standard's stricter language should be applied here to modify the court's analysis regarding the imputation of a conflict of interest under Model Rule 1.10(a).  According to Defendants, the Code of Trial Conduct is a necessary corollary of existing law in this court, since it was adopted by the court through a standing order.  Plaintiffs counter that the Code of Trial Conduct itself indicates in the preamble that it is meant "not to supplant, but to supplement and stress certain portions of the rules of professional conduct in each jurisdiction." (Preamble to the Code of Trial Conduct, Misc. No. 07-00186 (JAF), Docket No. 1 at 25.)  It goes on further to define its scope:

> This Code of Trial Conduct is intended to provide guidance for a lawyer's professional conduct *except in so far as the applicable law, code or rules of professional conduct in a particular jurisdiction require or permit otherwise*.  It is a guide for trial lawyers and should not give rise to a cause of action, create a presumption that a legal duty has been breached, or form the basis for disciplinary proceedings not called for under the applicable disciplinary rules.

(Standard No. 25 of the Code of Trial Conduct, Misc. No. 07-00186 (JAF), Docket No. 1 at 39 (emphasis added).)  Thus, Plaintiffs argue that the Code of Trial Conduct expressly requires that whenever provisions of the Model Rules come into conflict with the Code, the Model Rules, and not the Code, should prevail.

Plaintiffs' argument is persuasive.  Moreover, the court cannot find, and the parties have not proffered, any cases in this district applying the Code of Trial Conduct to a motion for disqualification, or in any other proceedings that deal with ethical matters.  In addition, Federal Rule of Civil Procedure 83, which governs the rule-making power of district courts, states that

> [a] local rule . . . remains in efect unless amended by the court or abrogated by the judicial council of the circuit.  Copies of rules and amendments must, on their adoption, be furnished to the judicial council and the Administrative Office of the United States Courts and be made available to the public.

Fed.R.Civ.P. 83(a)(1).  The rule goes on to state that "[n]o sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement."  Fed.R.Civ.P. 83(b).  The Advisory Committee Notes regarding Rule 83 state that "[t]he last sentence of Rule 83 has been amended to make certain that standing orders are not inconsistent with the Federal Rules or any local district court rules."  Fed.R.Civ.P. 83 advisory committee's note, 1985 Amendment; see also id. 1995 Amendement, Subdivision (b).

Here, the court's standing order adopting the Code of Trial Conduct would contradict Local Rule 83.5, which incorporates the Model Rules as the governing ethical standards for attorneys practicing before the District of Puerto Rico, in as much as Standard 7(e) of the Code requires a stricter rule of conduct than Model Rule 1.10(a).  Given this contradiction, the court opts to exercise its discretion in this case and reject the application of Standard 7(e) in favor of Model Rule 1.10(a).  The First Circuit has stated that, "[i]n general, it is for the district court to determine what departures from its rules may be overlooked."  Garcia-Goyco v. Law Environmental Consultants, Inc., 428 F.3d 14, 19 (1st Cir. 2005) (quoting United States v. Diaz-Villafane, 874 F.2d 43, 46 (1st Cir. 1989) (internal quotation marks and alterations omitted)).  "While the district court does not have 'unbridled' discretion to ignore the local rules, it enjoys a 'considerable latitude in applying

1   local procedural rules . . . and in departing from them.'" Id. (quoting Diaz-Villafane, 874 F.2d at

2   46). The court understands that the same principle should apply to the court's interpretation of its

3   standing orders; more so, given the reasoning behind subsequent amendments to Fed.R.Civ.P. 83.

4          As for the argument concerning the Puerto Rico Code of Professional Conduct, it is

5   sufficient for the court to note that Model Rule 8.5(b)(1) provides choice-of-law principles to

6   resolve conflicts when a lawyer is licensed or admitted to practice in jurisdictions with different

7   rules. See Rivera v. Periodicos Todo Bayamon, 1997 WL 43202, *2 (D.P.R. 1997). Model Rule

8   8.5(b)(1) states that "for conduct in connection with a matter pending before a tribunal, [the rules

9   of professional conduct to be applied shall be] the rules of the jurisdiction in which the tribunal sits,

10  unless the rules of the tribunal provide otherwise." Under Model Rule 8.5(b)(2), for any other

11  conduct – where the lawyers involved are admitted in more than one jurisdiction –, the rules to be

12  applied are those "of the jurisdiction in which the lawyer's conduct ocurred, or, if the predominant

13  effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to

14  the conduct." This rule further states that "[a] lawyer shall not be subject to discipline if the

15  lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the

16  predominant effect of the lawyer's conduct will occur." Model Rule 8.5 (b)(2).

17         Here the relevant conduct occurred "in connection with" the present case. Therefore,

18  pursuant to Rule 8.5(b)(1), "the rules to be applied" would be "the rules of the jurisdiction where

19  the court sits," i.e. the Model Rules. In Rivera v. Periodicos Todo Bayamon, this court treated the

20  federal district of Puerto Rico as a "jurisdiction" for purposes of Rule 8.5, since "[o]therwise the

21  substantive provisions of the Model Rules would never be applicable to the conduct of attorneys

22  before the court." Id. at 1997 WL 43202, *2. This court further noted that, to the question of

23  whether more than one set of rules of professional conduct could be applied by the same court to

24  the conduct of an attorney, the answer was no. "[T]he application of one jurisdiction's rules to an

25  attorney's conduct excludes the application of another jurisdiction's rules. Thus, for example, if

26  [the attorney's] conduct passes muster under the Model Rules, [the attorney] should not be

27  sanctioned by this Court." Id. at 1997 WL 43202, *3. Thus, because the motion to disqualify arose

28  in connection with a case that is currently pending in the federal district of Puerto Rico, the

**Civil No. 03-1100 (GAG/CVR)**              22

1   applicable rules are the Model Rules of Professional Conduct, according Local Rule 83.5.

2   **IV.     Conclusion**

3          For the aforementioned reasons, the court **DENIES** Defendants' motion for reconsideration

4   (Docket No. 560).

5          **SO ORDERED.**

6          In San Juan, Puerto Rico this 15th day of December, 2009.

7                                                    *S/Gustavo A. Gelpí*
                                                   GUSTAVO A. GELPI
8                                                 United States District Judge