**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

SOUTHWIRE COMPANY, et al.,

    Plaintiffs,

       v.

RAMALLO BROTHERS PRINTING,
INC., et al.,

    Defendants.

Civil No. 03-1100 (GAG/CVR)

## <u>OPINION AND ORDER</u>

Before the court is Defendants' motion requesting the certification of an interlocutory appeal (Docket No. 590) of the Memorandum and Order (Docket No. 555) denying their motion requesting the disqualification of Plaintiffs' counsel, and the Opinion and Order (Docket No. 585) denying their motion for reconsideration. Plaintiffs have timely opposed. (Docket No. 600.) For the reasons stated herein, the court **DENIES** Defendants' motion (Docket No. 590).

**I.    Background**

This is an action brought by plaintiffs Southwire Company et al. ("Southwire" or "Plaintiffs") against defendants Ramallo Brothers Printing, Inc. et al. ("Ramallo" or "Defendants") for alleged violations of state and federal environmental laws regarding the release of hazardous substances at a property that Southwire leased to Ramallo and that was used, *inter alia*, for manufacturing activities. Southwire seeks to recover response costs and damages incurred from responding to Ramallo's alleged contamination of the property.

On February 10, 2009, Defendants presented their motion to disqualify Walewska M. Watkins ("Watkins"), an attorney at Plaintiffs' law firm, O'Neill & Borges ("O&B"), as well as the firm itself, and join them from disclosing any confidential information concerning Ramallo and from maintaining any financial interest in Southwire's claim. (Docket No. 498.) The motion was timely opposed (Docket No. 505) and a motion hearing was held on February 23rd and 26th, 2009. Post hearing briefs were subsequently filed by both sides (Docket Nos. 517, 533, 537, 544, 548,

**Civil No. 03-1100 (GAG/CVR)**          2

1    549).

2        Defendants argued that O&B should be held in violation of the attorney-client privilege and

3    disqualified because in March 2008 they hired Watkins, who had previously worked with the law

4    firm John F. Nevares & Associates ("Nevares & Associates") while the same was providing legal

5    services to Ramallo in the instant litigation.  Defendants argued that under Rule 1.10(a) of the Model

6    Rules of Professional Conduct, "[w]hile lawyers are associated in a firm, none of them shall

7    knowingly represent a client when any one of them practicing alone would be prohibited from doing

8    so by Rules 1.7 or 1.9 . . ."  The defendants averred that Watkins worked on matters related to this

9    case while at Nevares & Associates in representation of Ramallo's interests, and would therefore

10   be personally disqualified from representing Southwire in the same case under Model Rule 1.9(a).

11   Thus, under Rule 1.10(a) the firm was prohibited, upon hiring Watkins, from representing Southwire

12   in the same litigation.  Plaintiffs countered that the applicable rule regarding the imputation of

13   conflicts of interest was Rule 1.10(a) as amended by the ABA's House of Delegates in Resolution

14   109, on February 16, 2009.  This resolution was passed just six days after Defendants filed their

15   motion.  Model Rule 1.10(a) was amended to explicitly allow the use of screening procedures to

16   avoid the imputation of conflicts of interest in the private-firm context.  Plaintiffs averred and

17   presented evidence that, since they were aware that Watkins had previously worked for Nevares &

18   Associates, they immediately implemented screening procedures, or a "Chinese Wall," upon hiring

19   Watkins to insulate the office from the appearance of impropriety.

20       Meanwhile, in March 2009 Watkins resigned from her position at O&B.  On October 19,

21   2009, the court issued its Memorandum and Order denying the Defendants' motion for

22   disqualification (Docket No. 555).  The court was persuaded by Southwire's argument that, under

23   Model Rule 1.10(b), the fact that Watkins no longer worked at O&B disposed of the matter entirely.[1]

24   _____

25

26       [1] Model Rule 1.10(b) reads as follows:

27       When a lawyer has terminated an association with a firm, the firm is not prohibited
         from thereafter representing a person with interests materially adverse to those of a
28       client represented by the formerly associated lawyer and not currently represented by

1  On November 2, 2009, Defendants filed a motion for reconsideration (Docket No. 560), which was

2  opposed (Docket No. 564) and replied to (Docket No. 579).   The court determined upon

3  reconsideration (Docket No. 585) that it committed an error of law when it denied Defendants'

4  motion for disqualification under Rule 1.10(b) of the Model Rules.   The court found that Rule

5  1.10(b) was, on its face, inapplicable to a case such as this, where the imputation of a conflict of

6  interest is alleged to have occured prior to the termination of the attorney's association with the firm.

7  The court then went on to consider the viability of Defendants' alternative arguments for

8  disqualification.   Of particular importance was the court's determination that under First Circuit

9  precedent it was compelled to apply the ethical standard that was in effect at the time the

10  disqualification motion was presented.   Thus, the court had to apply Model Rule 1.10(a) in its

11  original text, as of February 10, 2009.

12          Model Rule 1.10(a) in its original text did not expressly allow for the use of screening

13  mechanisms to insulate a private firm from the imputation of a conflict of interest.   Thus, the parties

14  disputed whether the presumption of shared confidences between Watkins and the members of O&B

15  should be considered rebuttable or not.   As the court noted in its Opinion and Order, the First Circuit

16  has not yet addressed this issue.   In Kevlik v. Glodstein, 724 F.2d 844, 849 n.5 (1st. Cir. 1984), the

17  Court considered the issue, but declined to reach it.   In the instant case, the court determined that it

18  should follow the approach of the Seventh Circuit under Schiessle v. Stephens, 717 F.2d 417, 420

19  (7th Cir. 1983), which adopted a rebuttable presumption standard.   It, therefore, denied Defendants'

20  petition that it adopt the approach of the Fifth Circuit under In re American Airlines, Inc., 972 F.2d

21  605, 614 n.1 (5th Cir. 1992), where the presumption is irrebuttable.   After applying the Schiessle test

22  to the case at hand, the court concluded that, given the information available to Plaintiffs' counsel

23  at the time of Watkins' hire, the screening mechanisms that were put in place were sufficient to

24  effectively insulate any flow of information from Watkins to the other members of the firm.

25

26          the firm, unless: (1) the matter is the same or substantially related to that in which the
27          formerly associated lawyer represented the client; and (2) any lawyer remaining in
            the firm has information protected by Rules 1.6 and 1.9(c) that is material to the
28          matter.

1    Defendants also contended, *inter alia*, that this court had to apply the Code of Trial Conduct,

2  which was adopted by a standing order on September 14, 2006.  (See Misc. No. 07-00186 (JAF),

3  Docket No. 1.)  Standard 7(e) of the Code of Tiral Conduct esablishes a *per se* rule requiring the

4  imputation of a conflict of interest in cases where the lawyer that creates the issue of disqualification

5  actually acquired confidential information in his previous representation.[2]  The first question,

6  therefore, was whether this standard's stricter language should be applied by this court to modify its

7  analysis regarding the imputation of a conflict of interest under Model Rule 1.10(a).  The court

8  determined that Standard 7(e) tended to contradict Local Rule 83.5, which incorporates the Model

9  Rules as the governing ethical standard for attorneys practicing before the District of Puerto Rico,

10  in as much as it requires a stricter rule of conduct than Model Rule 1.10(a).  Given this contradiction,

11  the court opted to exercise its discretion to reject the application of Standard 7(e) to the case at hand

12  in favor of Model Rule 1.10(a), citing to First Circuit caselaw holding that "it is for the district court

13  to determine what departures from its rules may be overlooked."   Garcia-Goyco v. Law

14  Environmental Consultants, Inc., 428 F.3d 14, 19 (1st Cir. 2005) (quoting United States v. Diaz-

15  Villafane, 874 F.2d 43, 46 (1st Cir. 1989) (internal quotation marks and alterations omitted)).  The

16  court understood that the same principle that governs district court discretion regarding local rules

17  should apply to the court's intepretation of standing orders, though it could not find any First Circuit

18  cases on-point.

19  **II.    Discussion**

20    In their current motion, Defendants ask the court to certify the following two questions: (1)

21  whether the imputation of a conflict of interest to the disqualified attorney's law firm established in

22  Model Rule 1.10(a), as it read on February 10, 2009, can be avoided by the implementation of

23  screening procedures; and (2) whether Standard 7(e) of the Code of Trial Conduct, which was

24  adopted in a standing order by the District Court of Puerto Rico, is consistent with Model Rule

---

26    [2] Standard 7(e) provides that "[w]hen a lawyer has left one firm and joined another, the
27  lawyer and the lawyer's new firm are disqualified from representing a client in a matter adverse to
    a client of the former firm if the lawyer acquired confidential information to the matter while with
28  the former firm."

Civil No. 03-1100 (GAG/CVR)                    5

1.10(a), as it read on February 10, 2009.

Pursuant to 28 U.S.C. § 1292(b) the court is empowered, in the exercise of its discretion, to certify a non-final, interlocutory order as eligible for immediate appellate review. Interlocutory appeals under section 1292(b) require an order (1) that involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) for which an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); Caraballo-Seda v. Municipality of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005). The First Circuit has repeatedly emphasized that "interlocutory certification under 28 U.S.C. § 1292(b) should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." Id. at 9 (quoting Palandjian v. Pahlavi, 782 F.2d 313, 314 (1st Cir. 1986) (citations omitted)).

This court understands that the  circumstances and procedural posture of this action do not meet the section 1292(b) criteria. The questions proposed by Defendants for certification revolve around the important interest of preserving the attorney-client priviledge. It could even be said that there is a substantial ground for difference of opinion regarding both questions since there are persuasive judicial precedents that support either side. The questions presented do not, however, constitute "controlling questions of law" for which "an immediate appeal from the [court's] order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The ultimate issues of this lawsuit are not affected by the order denying the disqualification of Plaintiffs' attorneys. Cf. In re Cement Antitrust Litigation, 673 F.2d 1020, 1026-27 (9th Cir. 1982) (citing United States v. Woodbury, 263 F.2d 784, 787 (9th Cir. 1959)) (question of whether district court judge erroneously disqualified himself viewed as collateral to the basic issues of the lawsuit, since it would only affect the duration of the lawsuit). As the Supreme Court has stated, "[t]he decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand, and the order embodying such a decision will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 378 (1981). "[S]hould the Court of Appeals

conclude after the trial has ended that permitting continuing representation was prejudicial error, it would retain its usual authority to vacate the judgment appealed from and order a new trial." Id. at 378-79.  The new trial would turn on the same issues that remain in this litigation, none of which will have been addressed or ruled upon if the court now grants Defendants' motion.  The court understands that a postjudgment appeal on the issue of disqualification would adequately address Defendants' concerns, especially considering the current timetable for this litigation.[3]

**III.     Conclusion**

For the aforementioned reasons, Defendants' motion requesting a certification for interlocutory appeal under 28 U.S.C. § 1292(b) (Docket No. 590) is hereby **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 1st day of February, 2009.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge

---

[3] The court notes that this case has been pending for just over seven years now.  The parties have recently submitted a joint proposed discovery schedule (Docket No. 573) that was approved by the court (Docket No. 574), in which they plan to finalize discovery by the end of this year and propose that trial begin in February of 2011.  Moreover, there is a pending motion for summary judgment cocerning CERCLA liability which might significantly narrow the remaining issues for trial and which is ripe for consideration.  (See Docket Nos. 582, 596, 597.)  Certifying the questions proposed by Defendants, assuming the Court of Appeals also grants certification, would delay the proceedings in this case by at least half the time it would take for the case to finalize before this court on the current timetable.